Good morning, your honors. May it please the court. My name is Harvey P. Sackett. I represent Carl Watkins, plaintiff-appellant in this matter. With the court's permission, I intend to reserve two minutes for rebuttal. All right. This case involves Watkins' claim for Social Security Disability Insurance benefits. Normally, I do not repeat what's clearly stated in the record insofar as facts. However, in this case, I believe that it's pivotal to go back and parse out certain facts relative to the administrative law judge's ultimate finding of non-disability. Specifically, the administrative law judge prefaced his ultimate finding of non-disability on the rejection of the opinion of Dr. Millard, the claimant's treating physician. There were two major components in that. Firstly, on excerpts page 43, the administrative law judge stated, quote, nerve blocks consistently and significantly reduced Watkins' pain for over a year, unquote. Now, relative to that finding, certain dates are crucial to understand the case. Watkins alleged disability as of January 2, 2003. The second date is December 31, 2003. That's the date when he last met the insured status for disability purposes under Title II. The epidural injection to which the ALJ referred to that prompted relief for eight or nine months came in August of 2002, long before the alleged onset date of disability. So assuming the truth of that, Your Honors, as of April of 2003, all the relief that Watkins might have experienced from that epidural had come and gone. So the worst that can be said is that the January 2003 date may be in question, but clearly as of April of 2003, he was back in excruciating pain. There is no other period in time, nor has the commissioner cited any, after that first epidural, which predates the alleged onset date, where it can be said with any degree of certainty that he got relief for eight or nine months. There was only one other period that lasted maybe six months in 2004. And even if that were true, Your Honors, under the commissioner's standards, if Watkins could have worked for that six months and had to stop again, he would still be disabled. That period would not count against him. The commissioner calls this an unsuccessful work attempt, because he stopped working because of the same underlying condition in six months or less. So what does that leave us with? The ALJ's outcome-determinative reliance on the checkbox form of a state agency physician. And I've outlined this in my brief, but I want to underscore the point. Dr. Chikatis was a non-examining, non-treating state agency physician. Number one, he didn't review all the medical evidence of record, particularly the MRI in 2002. What did he do? His specialty is geriatrics. He used a checkbox form and said the claimant wasn't disabled. Ninth Circuit case law is very, very clear on this point, that when an ALJ relies on a checkbox form from a non-examining, non-treating physician, it is inherently suspect. I want to take that one step further. Under the court's decision in Lester and its progeny, there's a pecking order. Here we have a non-examining physician who obviously didn't review all the medical evidence of record, but moreover, his specialty is not orthopedics. His specialty is not neurology. So we have to contrast the two. You've got a long-standing treating orthopedic surgeon, as opposed to somebody who did not examine the checkbox form. And it's for these two reasons, Your Honors. Number one, the ALJ's timeline being off insofar as the impact of the epidural injections, and number two, his reliance, exclusive reliance above and beyond the timeline for the epidurals on the opinion of a non-examining, non-treating physician that can only lead us to one conclusion. There is not substantial evidence to support the finding of non-disability. What do I do with — I'm puzzled a little bit by the sparsity of the record from Dr. Mallard at the end here. I mean, we've got his prior medical records and so on, but this form that he's filled out, you know, it's not much more than check-the-box either. Prognosis, good. What am I supposed to do with that? Point well taken, Judge Fletcher. Two things that comprise my answer. Number one, the Court's decision in Ryan, and number two, what does prognosis, good, really mean? In Ryan, the Court talked about how do we construe the term improvement? What does that really mean? Improvement can be relative. I make the analogy here to prognosis, good. The fact of the matter is that we have to look at Watkins' condition at the time that Dr. Mallard called it. I also make reference to Stedman's medical dictionary. Prognosis, obviously, at the risk of stating what is clear, talks about off in the future, what he hoped he might be with further medical care. But the question really is, what was his condition like at that time? What was his condition like when he alleged disability in January of 2003? What was his condition like in December of 2003, as of his date last insured? What was his condition like when Dr. Mallard signed off on the form? What the ALJ could have done was this, Judge Fletcher, he could have said, and this is done routinely, he could have said, Dr. Mallard gives Watkins a good prognosis. Therefore, I'm going to direct the local Social Security office to note a medical rediary date. So if, in fact, his prognosis is good, we're going to check on Watkins' condition in six months or 12 months or 24 months. What the judge did here, quite frankly, was throw the baby out with the bathwater. He had the option, if he felt he was going to get better, to still find him disabled and yet have the case reviewed later on. Okay. Mr. Zagar, I want to ask you a question which really reflects a more general interest in the fact this is the fourth shot you have. Did he have any lawyer when he went before the ALJ? He did, Your Honor. You? First me, and then my associate representative at a supplemental hearing. And then you represented him on the appeals? I did, Judge Noonan. What? I did, Your Honor, yes. And then you represented him before the magistrate? Before the district court, Judge. That's correct, Judge Noonan. Yes, Your Honor. I mean, we've set up a remarkable system that three people are supposed to look at all the evidence, and then it comes up here where we don't see anybody except the lawyers, and we're going to take a fourth shot. It's a very strange system. Thank you, Your Honor. I reserve the balance of my time. I'm not sure how I'm supposed to comment or respond to that. The answer could be yes, could be no. Your point's well taken, Judge Noonan. I'll leave it at that. Thank you. Thank you. May it please the Court, my name is Mary Beth O'Connor, and I represent Michael D'Astro, Commissioner of Social Security. I, too, would like to focus on the medical timeline in this case. We have plaintiff receiving an epidural in 2001, which his doctor noted was effective in reducing his symptoms in their entirety for several months. The next entry is in August of 2002, in which Dr. Malari gave him an epidural treatment to relieve pain. As counsel pointed out, the relevant period here is January 2nd of 2003 through December 31st of 2003. So the summer of 2002, we have an epidural. He goes from January 2nd of 2003 until August of 2003. At that time, he goes to Dr. Millard and says that the epidural was no longer working to treat his pain, and he gets another epidural. This is now September of 2003. Plaintiff does not again go back for any treatment until July of 2004, which is six or seven months past the end of his date last insured. Thus, in the period of 2003, which is relevant, plaintiff only once went to Dr. Millard complaining that his pain was not controlled. He received an epidural. He noted that he was taking Biox. He noted that he was doing exercise. If his pain is controlled during the relevant period, it's not disabling. Therefore, when you look at the functional assessment of his doctor, there is no medical evidence in the record that supports that, and it was thus properly rejected by the ALJ. Now, Dr. Millard's form filling out was done as I the dates are a little bit scribbled up. It looks as though it was in December of 2005. Correct. December of 2005. And to follow through on what I think then your argument is, even if he was entirely disabled in December of 2005, it doesn't matter. Is that your argument? That would not matter, but even if that assessment applied to 2003, there is no medical evidence in support of it. No, no, let me stick with that. I want to make sure I understand the point that his date of last insured is at the end of 2003. Correct. And he must show disability as of the end of 2003. Correct. And the fact that he's disabled or may or may not be disabled in 2005 is irrelevant to any recovery. Is that the point? That is correct, Your Honor. And not only that, but that would mean that the only opinion evidence we have for 03 would be the opinion evidence of Dr. Chakotis and, of course, the medical record itself, which is the most responsive of the evidence that we have. If Your Honors don't have any questions. Thank you. Your Honors, respectfully, opposing counsel's recital of the medical evidence is significantly inaccurate and incomplete. Mr. Watkins did seek and receive significant medical treatment before July of 2004 because of opposing counsel's representation. Let me ask you this, though, just to make sure I've understood the timeline properly with respect to the last insured date is the end of 2003. That's correct, Judge Fletcher. And the fact that he might be disabled in 2005 is neither here nor there, except as it might enable us to figure out what the state was at the end of 2003. If the assumption is that he first proved disability after December 3103, the answer would be yes. However, I would caution the Court respectfully that when Dr. Millard completed that form, he spoke to the entire period in question. The mere fact that he wrote it in 2005 doesn't mean that it wasn't applicable, because he says that it was applicable. Where does he say that? Well, first, he doesn't parse it out. The second thing is he talks about how long he had been treating the claimant. So I don't think we have to connect the dots here. I don't see anything in here where he first says this is relevant only as of when I'm filling out this form. He was his treating physician for eight or nine years. But more to the point of what opposing counsel said. I'm sorry. I think you pushed it a little bit there. I mean, this form asks how long he's been treating, and the answer is eight and a half years, four to five times a year. But the report as to what's going on seems to be in present tense, rather than in 2003 this was the state of affairs. And to the extent that he was using a form, he did answer in the present tense. That's correct. The form asks the questions in the present tense. Correct. And I should have perhaps modified the form and said this is what he's like now. Please tell me what he was like in the past. But more importantly, to opposing counsel's point, and I won't go through this very, very quickly. The claimant did receive ongoing medical treatment. In July of 2003, he saw Dr. Trehon. In August of 2003, he saw Dr. Millard. He said his pain was moderately severe. In September of 2003, he saw Dr. Millard again and had an epidural. He saw Dr. Trehon the same month. He saw Dr. Millard in October of 2003, or spoke with him on the phone. He saw Dr. Trehon in December of 2003 and said his symptoms were worsening. In December of 2003, he had another MRI. In January of 2004, he saw Dr. Bradshaw, who said he had right-side sciatica. Then he had a discogram in April of 2004. So contrary to what you've heard from opposing counsel, there was an ongoing litany of treatment both before and after the expiration of the date last insured. Thank you, Your Honors. Okay. Thank both of you. Helpful argument. Watkins v. Astrud now submitted for decision. That completes our calendar for this morning and for this week. We are in adjournment. Thank you very much.
judges: Duffy, Noonan, Fletcher W.